68   341
2ap 42

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. EDWARD HODNETT, Defendant.

*Adulterated milk — statutory standard — analysis — fair sample of the milk.*

In an action brought for the recovery of a penalty, under chapter 183 of the Laws of 1885, for selling, or supplying to a butter or cheese factory, adulterated milk, the analysis showing whether the milk was above or below the statutory standard, which determines the question whether the milk was adulterated, must have been made from a fair sample of the milk, and a sample taken from the milk after the cream had separated from it is not a fair sample.

Hence, when, on the trial of an action for the recovery of a penalty under the said act, it has been shown that the analysis of a sample of the milk showed that it was below the statutory standard, the defendant is entitled to introduce evidence tending to show that the milk was pure and had not been tampered with, and that the analysis had been made from a sample taken from the milk after the cream had separated from it.

MOTION by the plaintiff, the People of the State of New York, for a new trial upon exceptions ordered to be heard at the General Term in the first instance, by an order made at the Allegany Circuit, on the rendition of a verdict for the defendant, entered in the office of the clerk of Allegany county on the 15th day of June, 1891, the entry of judgment being in the meantime suspended.

*C. A. Dolson,* for the plaintiff.

*G. W. Harding,* for the defendant.

HAIGHT, J.:

This action was brought by Patrick J. Sutley, as assistant to the New York State Dairy Commissioner, in the name of the People, to

recover of the defendant a penalty of $100 for a violation of the provisions of the Laws of 1885, chapter 183, section 3. It is charged that the defendant, on the 24th day of June, 1890, supplied to a cheese factory in the town of Hume, Allegany county, milk which was adulterated with water, and from which the cream had been taken and the strippings withheld. The verdict was for the defendant.

Upon the trial the court permitted the defendant, his wife and son to testify, under the objection of the plaintiff, that they had not watered or skimmed the milk, or kept back the strippings therefrom. To this evidence an exception was taken, which presents the question we are called upon to determine in this review.

The analysis showed that the milk contained eighty-eight and twenty-four-one-hundredths per centum of water, and eleven and seventy-six-one-hundredths per centum of solids, of which two and twenty-six-one-hundredths per centum was fat. The correctness of the analysis was not attacked, but it was claimed by the defendant that it was made from an improper sample of the milk. The evidence submitted on behalf of the defendant quite satisfactorily shows that the sample was taken, on the morning of the twenty-fourth of June, of the night's milk of the day previous. The milk had been put in a can; allowed to stand over night; was taken to the factory the next morning; put into a weigh can, and, after standing for the space of not less than three minutes, was drawn therefrom through a faucet in the bottom of the can, and when from one-third to one-half of the milk had run out, the sample was taken.

It will not be questioned but that milk, after the cream is separated from it, will contain a greater percentage of water and less of solids than it would with the cream before separation. It is claimed that, during the night, the cream had separated from the milk and risen to the top of the can; that the cream, when once formed, would cling together in clots, and would not again become evenly and perfectly mixed with the milk; that after stirring it up, the cream would again rise quickly to the top, and that milk taken from the lower third or half of the can, under such circumstances, would not present a fair sample for analysis. The trial court submitted this branch of the case to the jury for its determination, and charged

in reference to whether the sample was a fair one, they might consider the evidence of the defendant, his wife and son, as bearing upon the probability This charge was not excepted to. Had the plaintiff regarded this evidence as having no bearing upon that question, he should have excepted to this portion of the charge. As it is, he stands solely upon the exception taken by him to its reception.

The statute prohibits the sale of, or the supplying to a butter or cheese manufactory, milk diluted with water, or from which the cream has been taken, or the strippings withheld. It also provides that in all prosecutions under it, if the milk be shown to contain more than eighty-eight per centum of water or fluids, or less than twelve per centum of milk solids, which will contain not less than three per centum of fat, it shall be declared adulterated. (Laws of 1885, chap 183, §§ 3, 16.)

It has been held under this statute that the question as to whether the milk was adulterated was to be determined from the chemical analysis alone, showing whether it was above or below the statutory standard (*People* v. *Kibler*, 106 N. Y. 323; *People* v. *West*, Id. 293; *People* v. *Cipperly*, 37 Hun, 324; 101 N. Y. 634; *People* v. *Eddy*, 12 N. Y. Supp. 628; *State* v. *Campbell*, 64 N. H. 402.)

But the question as to whether the analysis is correct, or is made from a fair sample of the milk, is still left open for the determination of the jury from the evidence in the case. Upon controverted questions of fact the courts have always been liberal in the reception of evidence that in any manner bears upon the probabilities, so as to enable the jury to arrive at a correct determination. If the sample was taken from the milk after the cream had separated from it, it would not be a fair one nor fit for analysis. This is conceded by the plaintiff's chemist. He testified that if the cream had risen from the milk it "would have been unfit for analysis because the fat had partly wasted, and of course I could not have got that back in the condition it should have been for a proper analysis. Had there been any wasted the milk would not have been in good condition and fit for analysis." He found the sample deficient in solids This would be expected if the cream had been separated from it He also found an excess of water. This would also be expected in case of such separation. The defendant had the right to account for this condition of the

milk, and thus established his innocence. To do so he showed that the milk was pure and had not been tampered with; that the milk had remained in the can over night; that the cream had separated from the milk and had risen to the top of the can; that it had not again been perfectly mixed with the milk, and that the sample from which the analysis was made was taken from the lower third or half of the can. It appears to us that the evidence objected to has a bearing upon the probabilities in aid of the defendant's claim, and although slight, it is sufficient to justify its reception.

There may be some portions of the charge of the trial court subject to criticism, but the plaintiff has called our attention to no error therein, and none are presented by any of the exceptions taken thereto. If counsel desires to except to a proposition charged, or to a remark of the judge, he should clearly and distinctly call the attention of the judge to the proposition or remark to which an exception is taken. An exception to a charge relating to a subject containing two or more propositions is too general if any one of the propositions is correct. (Baylies' Trial Practice, 239, and authorities there cited.)

The motion for a new trial should be denied, and judgment ordered for the defendant on the verdict.

All concurred.

Plaintiff's motion for a new trial denied, with costs, and judgment ordered for the defendant on the verdict.