PEOPLE v. LOOMIS.

(Supreme Court, Appellate Division, Third Department. November 12, 1902.)

1. CRIMINAL LAW—APPEAL—RECORD.
   The remarks made by the district attorney in opening cannot be held prejudicial; the record not showing them, but only the objections of defendant and the remarks of the court; the latter indicating that the statement referred to in the objections was not made.

2. SAME—CONFESSIONS—OTHER CRIMES.
   Where defendant, in one conversation, speaking in reference to the discovery of intermingled property taken from two houses, confessed to both robberies, admission of the whole confession, on a trial for robbery of one of the houses, is not ground for reversal.

3. ROBBERY—EVIDENCE.
   On a prosecution for robbing a house, there being no evidence of more than one robbery, testimony detailing the articles (found together) taken therefrom, though including articles not specified in the indictment, is admissible.

4. WITNESS—CRIMINATING TESTIMONY—WAIVING PRIVILEGE.
   On a prosecution for robbery, a witness indicted therefor, and also for concealing the stolen property, though testifying to the robbery, may, under his privilege, refuse to testify in regard to the concealment.

5. CRIMINAL LAW—EXPLAINING PREVIOUS TESTIMONY.
   A witness, in explanation of having previously sworn directly opposite to her testimony, may testify that she did so at defendant's request, and because of fear of personal injury if she did not testify as he directed.

Appeal from trial term, Madison county.

Augustus Loomis was convicted of burglary in the third degree and grand larceny in the second degree. His motion for a new trial was denied, and he appeals. Affirmed.

¶ 2. See Criminal Law, vol. 14, Cent. Dig. § 823.

Argued before PARKER, P. J., and KELLOGG, SMITH, and CHASE, JJ.

G. P. Pudney, for appellant.

M. H. Kiley, Dist. Atty., for the People.

CHASE, J. The defendant was convicted of the crimes of burglary in the third degree and grand larceny in the second degree. The people contend that the evidence shows that on the night of September 17, 1898, the defendant was at the house of one H., and that on the evening of that day defendant and said H. and one B., with a pair of horses and a wagon, went to a summer cottage, then unoccupied, belonging to one S. and his son, and that, while B. looked after the horses, H. and defendant broke into and removed from said cottage a large quantity of personal property, and put the same into the wagon, and that said property was by them taken to the house of said H., and all, or substantially all, of it was left there. On the 5th day of January, 1898, S. made application to a magistrate for a search warrant. A warrant was obtained to search for the goods of one L. and for the goods of S. H. received notice that a search warrant was about to be issued, and, with the assistance of others, during the night of January 5th removed some of the personal property stolen from S., and perhaps other property, from his house, and secreted it in barns, stone piles, and in the woods back of H.'s and defendant's premises. The search was made early on the morning of January 6th. Mrs. H. went to defendant's the night before with a lantern, and, immediately after the search was made, defendant came to the house of H., and asked Mrs. H. if they had found anything at the house, and she told him that they did. Defendant said "Mr. H. knew what things were taken, and he would have thought he would have got what things were stolen out of sight." The indictment against the defendant upon which he was convicted was subsequently found, and in the indictment are enumerated certain articles as having been stolen by the defendant from the S. cottage,—not, however, including all the articles so taken from said cottage. The testimony taken on the trial is conflicting, but the verdict against the defendant should not be reversed as being against the weight of evidence.

The defendant objects to remarks which he claims were made by the district attorney in his opening. The record does not contain the opening of the district attorney, nor any part thereof. All that is before this court relating to such opening are the objections of the defendant and the remarks of the court. Objections to the opening were twice made. The inference to be drawn from the first objection is uncertain. The objection may have been made in anticipation of statements that might be made, or that were then only foreshadowed, by the district attorney. The remark of the court following the second objection shows that the district attorney had not made the statement referred to in the objection. In the absence of a record as to what the district attorney did say, we cannot find that the defendant was prejudiced in the minds of the jury by the opening.

The people produced a witness by whom the defendant was employed about the middle of January, 1899, and he testified to a con-

fession made by the defendant to him. His testimony relating thereto
is as follows:

"He said that, 'Under the circumstances, Frank, I will tell you something,
but you must promise never to tell of it.' I told him I would do all I could
for him. He said his wife and my wife were some relation, and had always
been good friends, and he knew I would help him. He told me that Mr.
Campbell and Hartwell and Lovisa Marvin and Wellington Barber and himself
self went to the Smith cottage. Q. What did he say they did there? A.
Took the goods out. * * * Q. What did he say about the Lewis cottage?
Defendant's Attorney: I object to it as incompetent, improper, and imma-
terial. You cannot prove the commission of another crime to convict the
defendant on this indictment. The Court: I think we will take all that he
said on this occasion. Exception to defendant. He said that Frank Hart-
well and his wife and Morrell Campbell and Wellington Barber and himself
went to the cottage of Mrs. Lewis. People's Counsel: Q. What did he say
about that? A. Just the same. Q. State all that he said. A. He didn't
want me to tell of it, and do all I could to help him out of it. I told him
I would. I told him to make a clean breast of it, and tell Mr. Smith and
Mrs. Lewis; and then I told him to tell the district attorney of it. Q. It
was all in this one conversation? A. Yes, sir."

At the time of this statement by the defendant the warrant to
search for the property of L. and S. had been issued and served,
and the officers had found at and near the house of H. much of the
property specifically mentioned in the indictment; also other prop-
erty taken from the S. cottage not enumerated in the indictment, and
some of the property of L. The defendant knew of the issue and
service of the search warrant, and that stolen property had been found.
The witness and the defendant were talking of the disclosures. The
property so found was intermingled. The defendant's desire for help
came from the admissions constituting the entire conversation, and
the advice sought and obtained by him was also based on the con-
fession as a whole. The confession consisted of one conversation
and one disclosure on the part of the defendant, and the fact that it
included a statement as to the L. cottage does not require a reversal
of the judgment. Any objection to the witness being interrogated
in regard to the admissions before the defendant was questioned in
regard thereto was waived by the defendant's being subsequently
called to contradict such admissions. People v. Weldon, 111 N. Y.
569, 19 N. E. 279.

Evidence of S. was received, detailing the appearance of the interior
of the cottage after the burglary, and enumerating the property which
had been taken therefrom. Defendant objected to the witness stating
that any property other than that enumerated in the indictment was
missing from the cottage, and excepted to the ruling of the court al-
lowing such testimony. The defendant also excepted to testimony
being received specifying the property found at and near the house
of H. at the time the search warrant was executed. There is no evi-
dence of a burglary having been committed at the Smith cottage,
other than the one for which the defendant was indicted. There is
no evidence that any property was found, other than property that
came from the S. cottage and from the premises of L. Evidence
showing that articles were taken in addition to those specified in the
indictment at the time, and as a part of the transaction on which the
indictment was found, and also that such articles were found in the

possession of the defendant, is admissible.  Foster v. People, 3 Hun, 6, 63 N. Y. 619.  The testimony relating to the search warrant, and that it required that search be made for the property of L. as well as of S., and the further fact that some property belonging to L. was found, was all received without objection.  The statements in the brief and in the defendant's objections that the property taken from the S. cottage, and not enumerated in the indictment, constituted an independent crime, and statements to the effect that evidence was being given of a series of crimes, are assumptions, so far as the record before us discloses.

The witness B., for the people, was under indictment for the same crime as that for which the defendant was indicted, and he was also under indictment for concealing the stolen property.  He gave evidence for the people detailing without reserve all the facts claimed by him as constituting the theft from the S. cottage.  On his cross-examination, when interrogated in regard to moving the goods from the house of H. on the night of January· 5th, he declined to answer questions relating to his personal connection with the removal of said goods, and the court ruled:

"He is indicted for receiving stolen property.  Anything that would tend to criminate him in respect to that,—any inquiry directed to a subject that was not inquired about by the district attorney on this trial,—he may refuse to answer, if he bases his refusal on the ground that it tends to criminate him."

The questions that the witness declined to answer did not relate to a subject that had been inquired into by the district attorney, and even assuming that it is the rule that one cannot testify as a witness, and, being aware of his privilege, give testimony tending to criminate himself, and afterwards stop short of a full disclosure by claiming his privilege, such rule was not violated in this case.

It was not error to allow the witness M., in explanation of her having previously sworn directly opposite to the testimony given on this trial, to testify that she did so at the request of the defendant, and because of fear of personal injury if she did not testify as he desired and directed.

Under section 542 of the Code of Criminal Procedure, we are required to give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.  We are of the opinion that the substantial rights of the defendant in this case have not been affected by any adverse ruling made by the court, or by any manifestations of zeal that appear in the record.

Judgment and order affirmed.  All concur.